UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DANIELLE R. LANKFORD, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00206-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Danielle Raynae Lankford ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for summary judgment [Docs. 24 & 26] and filed supporting briefs [Docs. 25 & 27]. This matter is now ripe. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 24] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 26] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

### I.   ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB and SSI on November 7, 2013, alleging disability beginning May 1, 2011 [Doc. 17 ("Tr.") at Page ID # 80]. Plaintiff's claims were denied initially and on reconsideration at the agency level. On October 30, 2014, Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 155-56), which was held in Chattanooga, Tennessee, on March 4, 2016 (Tr. 46). On April 4, 2016, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date through the date

of decision (Tr. 16-40). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on March 10, 1986, making her as a "younger individual" on the alleged onset date (Tr. 38). She has a General Education Diploma, or GED, and is able to communicate in English (Tr. 38, 49). She has worked as a cashier, waitress, and housekeeper, among other jobs (Tr. 51-50), but none of this work was performed at substantial gainful levels (Tr. 38).

### B. Medical Records

In her Disability Report, Plaintiff alleged disability due to anxiety attacks, depression, and "nerves" (Tr. 234). Plaintiff [Doc. 25 at Page ID # 875-80] and the ALJ (Tr. 21-38) each set forth a detailed, factual recitation of Plaintiff's medical record, vocational record, and the hearing testimony. The Commissioner adopts the facts set forth by the ALJ and also includes citation to the medical record throughout her argument [Doc. 27 at Page ID # 894-905]. While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on March 4, 2016, Plaintiff and a vocational expert ("VE") testified. The Court has carefully reviewed the transcript of the testimony from the hearing (Tr. 46-72).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

    **B.**    **The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2016 (Tr. 21). At step one of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2011, her alleged onset date (Tr. 21). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine ("DDD"), obesity, major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and panic disorder with agoraphobia (Tr. 21). The ALJ also noted Plaintiff had hyperlipidemia, hypertension, and a thyroid disorder, but found these conditions were not severe (Tr. 30). At step three, the ALJ found Plaintiff does not have an impairment or combination of impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 30).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is able to understand, remember, and carry out simple, detailed, and multi-step detailed tasks. She can maintain concentration, persistence and pace for two-hour periods over an eight-hour workday with customary breaks. She would benefit from a familiar, repetitive work routine and should avoid excessive workloads and multiple demands. She might have an infrequent

> interruption from psychologically based symptoms, but this is not a significant limitation. She needs nonconfrontational and supportive supervision. She can deal with changes in a routine setting that are well explained infrequently (less than occasionally). She can have no contact with the general public, but can have contact with supervisors and a few supportive co-workers that is casual and non-intensive. Feedback should be supportive, similar to her supervision.

(Tr. 36). At step four, the ALJ found Plaintiff had no past relevant work, because none of her past work was performed at substantial gainful levels (Tr. 38). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy including housekeeper, drycleaner helper, production assembler, garment sorter, laminating machine offbearer, and ticket printer (Tr. 39). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision (Tr. 40).

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and/or remanded under sentence four for several reasons: (1) "The RFC determination is not supported by substantial evidence because the ALJ did not articulate how the evidence of record supports his RFC determination that Plaintiff is capable of medium work; the ALJ relied on an incomplete hypothetical which asked the VE to presume no exertional limitations, and made a post-hoc rationalization that Plaintiff is capable of medium work based on the occupations listed by the VE in response to that hypothetical, despite finding that Plaintiff has severe impairments of degenerative disc disease of the lumbar spine and obesity." (2) "The ALJ failed to develop the record by not requesting a consultative examination regarding Plaintiff's physical impairments." (3) "The ALJ's RFC describes sheltered work not rising to the level of substantial gainful activity." [Doc. 25 at Page ID # 873].

## A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d

690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.     The ALJ's Assessment of Plaintiff's Physical RFC**

Plaintiff's first challenges the ALJ's assessment that Plaintiff is capable of medium-level exertional work.[1] She complains about the assessment in two main ways. First, she argues the

---

[1] Other than through her sheltered work/substantial gainful activity arguments, which are addressed below, Plaintiff does not challenge the ALJ's assessment of her mental limitations, only her physical limitations. The Court is aware the ALJ limited Plaintiff to a range of medium work reduced by her mental limitations.

determination is not supported by substantial evidence because is no medical opinion evidence in the record concerning her physical capabilities, and because the ALJ failed to explain what evidence showed Plaintiff was capable of all the exertional and nonexertional physical demands of medium work [Doc. 25 at Page ID # 882-84]. Second, she points out that when the ALJ posed a hypothetical RFC to the VE to determine whether there was work available to Plaintiff, the ALJ did not include any physical limitations at all; rather, the ALJ asked the VE to "presume . . . there is no demonstration of severe, exertional limitations." (Tr. 67). Taking into account the extensive mental limitations which the ALJ did include, the VE identified occupations at the light exertional level (garment sorter, production assembler, laminating machine offbearer, ticket printer), and at the medium exertional level (housekeeper, drycleaner helper). As Plaintiff sees it, when the time came to articulate Plaintiff's RFC, the ALJ realized Plaintiff did have physical limitations that should have been included in the hypotheticals to the VE. To deal with this, the ALJ allegedly simply conformed Plaintiff's physical RFC to match the exertional levels of the occupations the VE identified at the hearing. Plaintiff argues this "post-hoc rationalization" cannot be affirmed [Doc. 25 at Page ID # 884-85].

A claimant's RFC is the most a claimant can do despite their impairments. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks

and citations omitted). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

First, as the Commissioner points out, the record does contain two medical opinions concerning Plaintiff's physical condition. Non-examining Disability Determination Services ("DDS") physicians concluded in September 2011 (on a prior application), and in September 2014 that Plaintiff did not have any severe physical impairments[2] (Tr. 127, 437). Regarding these opinions, and other evidence in the record concerning Plaintiff's physical impairments, the ALJ wrote:

> In terms of the claimant's alleged physical impairments, I have given her much benefit of the doubt in finding degenerative disc disease and obesity severe, because the DDS assessments were certainly reasonable when made. However, I have given these opinion[s] little weight overall, because the 2013 MRI results do show degenerative changes at L5-S1. This could produce the asserted low back pain, which might also be exacerbated by the claimant's obesity. The claimant may also be physically limited to some degree by her reports of fatigue, weakness, and low energy, from whatever cause. Accordingly, I have limited her to medium exertional level work, though the vocational expert testified that jobs would also be available at the light exertional level, had I found the medical evidence of record supportive of greater physical restrictions.

(Tr. 37 (internal citations to Tr. omitted)).

A non-severe impairment is one which does not "significantly limit" a claimant's ability to do work-related activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The Sixth Circuit has held an

---

[2] The only physical impairments the DDS physician found in September 2014 were hyperlipidemia and a disorder of the thyroid gland (Tr. 127). The only physical impairments the DDS physician found in September 2011 were hypothyroidism and acid reflux (Tr. 437).

9

impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (internal quotation marks and citation omitted). Accordingly, in finding Plaintiff's physical impairments were not severe, the DDS physicians effectively found the physical impairments were only slight abnormalities, and that Plaintiff was not significantly limited[3] in performing any exertional or nonexertional physical work activities.[4] While the ALJ only placed "little weight overall" on the DDS physicians' opinions, he also credited them to some extent by finding Plaintiff capable of only medium-level exertional work in an environment that accommodated her mental limitations. The ALJ expressly states that he declined to more fully credit the DDS physicians' opinions (that Plaintiff had no significant exertional or nonexertional physical limitations), in light of Plaintiff's obesity, as well as her subjective complaints of pain[5] and the degenerative changes shown in her 2013 MRI (Tr. 37). The ALJ also exhaustively detailed the history of Plaintiff's physical impairments earlier in the decision, including Plaintiff's long term but conservative treatment for lower back pain (Tr. 25, 28-29). This evidence provides

---

[3] As at least one court in the Sixth Circuit has noted, the definition of non-severe impairment "contemplates that non-severe impairments may very well impose *some* type of limitation on basic work activities; accordingly, [a] conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment—either singly or in combination with a claimant's other impairments—does not impose *any* work-related restrictions." *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015).

[4] Nonexertional physical functions include reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. § 404.1569a(c)(vi).

[5] The ALJ concluded that Plaintiff's subjective complaints about the "intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent" with the other evidence in the record (Tr. 37), a finding Plaintiff does not challenge. The ALJ further noted that although Plaintiff alleged "low back pain," she "primarily asserts disability from her mental health issues," which Plaintiff also does not challenge (Tr. 37).

substantial support for the ALJ's physical RFC finding. *See* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *4 (July 2, 1996) ("A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).")

As Plaintiff notes, the RFC reflects the ALJ's conclusion that Plaintiff is capable of performing all of the exertional and nonexertional physical requirements of medium work (sitting, standing, walking, lifting, reaching, handling, etc.). While Plaintiff argues this conclusion is in error, she fails to identify a single physical requirement of medium work, exertional or nonexertional, that she was demonstrably incapable of performing. She points to the MRI and her past subjective complaints of pain as evidence of a physical impairment, but the ALJ clearly considered this evidence. The ALJ explicitly noted he was giving Plaintiff "much benefit of the doubt" in finding her DDD and obesity to be severe impairments at step two (Tr. 37). Plaintiff's position seems to be that DDD of the lumbar spine per se indicates an inability to perform some or all of the physical requirements of medium work, but this is incorrect. Rather, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth*, 217 F. App'x at 429 (internal quotation marks and citations omitted).

Plaintiff also seems to argue the ALJ erred by failing to include the "function-by-function" analysis required by SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his

11

or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). However, case law in the Sixth Circuit provides that the ALJ is simply required to consider each function, not to discuss each function separately in the written decision. *See, e.g.*, *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002); *see also Pendergrass v. Berryhill*, No. 1:16-cv-145, 2018 WL 1460867, at *10 (E.D. Tenn. Mar. 23, 2018). Nevertheless, "if the ALJ determines that an impairment does not cause functional limitations or should otherwise not be included in the . . . RFC, he should explain his reasoning." *Murray v. Colvin*, No. 3:12-0410, 2014 WL 5323061, at *12 (W.D. Tenn. Oct. 16, 2014).

Despite the fact that the ALJ did not go through each of the physical functions of medium (or light) work in his lengthy decision, the decision makes clear why he did not think Plaintiff's physical impairments needed to be addressed in the RFC beyond the limitation to medium-level exertional work. He explained (1) the primary basis for Plaintiff's disability claim was for her mental impairments, which is very clearly borne out in the record including Plaintiff's extensive testimony; (2) the DDS assessments finding no severe physical impairment were "reasonable when made"; and (3) Plaintiff's subjective complaints[6] were not entirely consistent with the evidence. The ALJ further noted that "inclusion of the medium exertional level is not material," because the VE also identified occupations available to a person with Plaintiff's mental limitations at the light exertional level (Tr. 39). Again, Plaintiff fails to point to any evidence in the record that the ALJ

---

[6] At the hearing, Plaintiff did not testify to any physical limitations (Tr. 52-67). In addition, her attorney did not ask the VE any questions that incorporated any physical limitations (Tr. 70-72). This is all despite a fairly lengthy conversation about Plaintiff's use of narcotic pain medications (Tr. 62-67). The only mention of any physical issues at all was Plaintiff's attorney's statement that "Comprehensive Pain treats her for her back pain." (Tr. 66).

did not consider. The ALJ also stated that he considered the entire record, including the effect of Plaintiff's obesity, before determining her RFC (Tr. 36). *See, e.g.*, *Katon*, 2015 WL 871617, at *7 (finding reversible error where the ALJ found "mild limitations" in areas of mental functioning at step two, but "never return[ed] to this thought in the course of his RFC analysis"); *Murray*, 2014 WL 5323061, at *12 (finding reversible error where ALJ discussed physical impairment at step two of the sequential process, but "failed to discuss" the impairment "at any later step in the disability determination process").

In sum, while the ALJ's extensive written decision would have been more complete if he would have discussed each of the physical requirements of medium (or light) work, the Court finds the ALJ's discussion adequate in this case.

The second part of Plaintiff's first argument dovetails with the first. As mentioned, the ALJ did not include any physical limitations in the hypotheticals he posed to the VE at the hearing, although he did identify significant mental limitations (*see* Tr. 67). The VE then identified a number of occupations that accommodated Plaintiff's mental limitations, which were at either the medium or light exertional level[7] (Tr. 69-70). In his decision, the ALJ listed the jobs identified by the VE during the hearing, and then wrote:

> While I did not provide a specific exertional level in my actual question to the [VE], inclusion of the medium exertional level is not material because [the VE] identified jobs at the medium and light exertional levels that were responsive to the nonexertional restrictions in the above residual functional capacity. Pursuant to SSR 004-p, I have determined that the vocational expert's testimony

---

[7] It appears the VE used Plaintiff's past work, which included housekeeping and production assembly, as a starting point for identifying occupations available to a person with Plaintiff's RFC, even though Plaintiff did not perform these jobs long enough for them to qualify as substantial gainful activity (Tr. 51, 69).

13

is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.

(Tr. 39).

It is undisputed that the Commissioner has the burden of proof at the fifth step of the sequential process used for determining whether a claimant is disabled. Specifically, the ALJ must "make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'" *Howard*, 276 F.3d at 238 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Substantial evidence "may be produced through reliance on the testimony of a [VE] in response to a 'hypothetical' question," *id.* (citing *Varley*, 820 F.2d at 779), but only if the question takes into account the claimant's limitations. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Nevertheless, the "rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth*, 217 F. App'x at 429 (internal quotation marks and citation omitted).

Plaintiff claims the ALJ's question to the VE was "incomplete" and therefore cannot constitute substantial evidence, because the ALJ did not include any physical impairments in the question [Doc. 25 at Page ID # 884]. But the ALJ was not required to list all of Plaintiff's conditions or impairments—just her functional limitations. *Webb*, 368 F.3d at 633. And, the ALJ was only required to include the functional limitations he found credible. *Helton v. Berryhill*, No. 7:18-cv-008-JMH, 2018 WL 5986747, at *6 (E.D. Ky. Nov. 14, 2018) ("Additionally, '[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'" (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (alteration in original)).

14

Clearly, the ALJ found Plaintiff could perform all physical requirements of medium work regardless of her "severe" DDD and obesity, and as discussed above, this finding is supported by substantial evidence. *See Griffeth*, 217 F. App'x at 428-29 (rejecting argument that "hypothetical given to the ALJ was flawed because contained no limitations related to his 'severe' impairment of depression"). The fact that the ALJ did not limit the hypothetical question to medium exertional-level work is not reversible error when the VE actually identified medium exertional-level occupations available to Plaintiff, as well as light exertional-level occupations.

The Court finds the ALJ properly considered the medical evidence regarding Plaintiff's physical condition. While perhaps the Court and the parties would have benefitted from a more specific description of Plaintiff's physical functional abilities in the hypothetical question to the VE and in the written decision, these possible deficiencies do not merit remand in this case. Accordingly, Plaintiff's motion will be denied in this regard.

### C.     The ALJ's Decision not to Order a Physical Consultative Exam

Next, Plaintiff argues the ALJ failed to develop the record as to her exertional limitations and should have ordered a consultative examination. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster*, 279 F.3d at 355 (citing 20 C.F.R. §§ 404.1517; 416.917) (other citation omitted). In this case, where Plaintiff was represented by counsel throughout the administrative proceedings, the ALJ "did not have a special duty to develop the record." *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751, 2013 WL 3455483 (6th Cir. 2013) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)) (per curiam). Rather, Plaintiff had "the burden of proving the existence and

severity of limitations caused by her impairments." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

The ALJ's decision makes clear that the record contained a number of examinations and reports concerning Plaintiff's physical impairments and especially her back pain. Plaintiff's entire argument on this issue seems to hinge on her belief that the ALJ had no medical opinion evidence concerning her physical RFC. As discussed above, however, the record does contain opinions from two DDS nonexamining physicians. While the DDS physicians did not assess Plaintiff's physical abilities on a function-by-function basis, their opinions—that Plaintiff had no severe physical impairments—provide support the ALJ's determination that Plaintiff was capable of performing all of the exertional and nonexertional demands of medium work, particularly medium work that accommodates Plaintiff's mental limitations. *See Culp*, 529 F. App'x at 751, 2013 WL 3455483 (citing 20 C.F.R. § 404.1519a; *Foster*, 279 F.3d at 355-56) ("Given that the record contained a considerable amount of evidence pertaining to Culp's mental limitations and that Dr. Douglass had completed a mental RFC assessment in March 2008, the ALJ did not abuse her discretion by declining to obtain an additional assessment.").

Plaintiff cites *Henning v. Colvin*, No. 3:13-CV-753-H, 2014 WL 4364622 (W.D. Ky. Sept. 3, 2014),[8] but that case is distinguishable. Ms. Henning's physical impairments were "many and varied," "not common," and they "often require[d] diagnosis by specialists." *Id.* at *4. Moreover, there was no medical opinion testimony at all in that case. *Id.* at *3. Plaintiff also quotes *Sweitzer v. Astrue*, No. 1:08-CV-170, 2009 WL 3064665 (E.D. Tenn. Sept. 23, 2009), but she leaves out a

---

[8] Plaintiff actually cites the report and recommendation entered by the magistrate judge in *Henning* [Doc. 25 at Page ID # 886]. The Court cites to the order adopting the report and recommendation, which reproduces the report and recommendation in its entirety.

key part of the court's decision. In *Sweitzer*, the court found the ALJ had erroneously rejected the opinions of one examining physician and one non-examining physician concerning Plaintiff's physical RFC. The court then reasoned:

> Here, the ALJ rejected the functional limitation opinions of every expert he cited who opined on the question [of RFC], i.e. Dr. Mullady and Dr. Gulbenk. Consequently, the ALJ's opinion concerning Plaintiff's residual functional capacity does not rest on any evidence obtained from medical experts. Because the ALJ does not address precisely how either of these professional opinions are inadequately supported, the Court finds the ALJ's opinion is itself unsupported by substantial evidence.

*Id.* at *6 (citation omitted). In other words, that cased hinged on the ALJ's improper rejection of the medical experts' opinion. In this case, as discussed above, the ALJ clearly credited the DDS physicians' opinions to the extent he assigned the opinions "little weight" and not no weight; and he emphasized they were "certainly reasonable when made." (Tr. 37). He also provided a reasonable and well-supported explanation for not assigning them more weight, which worked in Plaintiff's favor. Moreover, as far as the Court can tell, there is no indication Plaintiff or her counsel ever requested a consultative exam or have taken the position, until now, that the evidence concerning Plaintiff's physical condition was inadequate.

Accordingly, the Court finds the ALJ's decision should not be reversed on the basis that the ALJ did not request a consultative examination.

### D. Substantial Gainful Activity

Plaintiff next argues that the RFC "describes sheltered work not rising to the level of substantial gainful activity." [Doc. 25 at Page ID # 886]. SSA regulations provide that "sheltered work" *may* not constitute substantial gainful activity (hereafter "SGA"), "if it can be shown that the claimant is not truly earning the amounts he or she is being paid." *Webb v. Comm'r of Soc.*

*Sec.*, No. 14-12332, 2015 WL 4756589, at *4 (E.D. Mich. Aug. 11, 2015) (citing 20 C.F.R. 404.1574(a)(3)). If a claimant's impairments cause them to be unable "to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given to people doing similar work," they may be considered incapable of SGA. 20 C.F.R. 404.1573(b); *see also Tolliver v. Apfel*, 238 F.3d 424, 2000 WL 1721040, at *3 (6th Cir. Nov. 8, 2000) (table) (citation omitted). Some examples of "special conditions" that may cause a person's work to fall short of SGA levels include:

> (1) requiring and receiving "special assistance from other employees in performing [the] work";
>
> (2) being "allowed to work irregular hours or take frequent rest periods";
>
> (3) being "provided with special equipment" or "assigned work especially suited to [the person's] impairment";
>
> (4) being "able to work only because of specially arranged circumstances," such as having help preparing for work or being transported back and forth to work;
>
> (5) being "permitted to work at a lower standard of productivity or efficiency than other employees"; and
>
> (6) being given the opportunity to work because of a special relationship with the employer

20 C.F.R. § 404.1573(c).

In support of her argument that her RFC does not allow for SGA, Plaintiff cites *Boyes v. Secretary of Health & Human Services*, 46 F.3d 510 (6th Cir. 1994). In that case, the Sixth Circuit held the claimant's past work was not SGA where his "productivity was less than one-half that of a typical nonimpaired person," he "relied on special transportation to get to and from work," and "he completed his work duties through constant on-site supervision." *Id.* at 512. Moreover, the

18

VE in *Boyes* testified "that a person who needed close supervision and specially arranged transportation would not be considered competitively employable." *Id.* *Boyes* is clearly distinguishable. Plaintiff in this case was only limited to avoiding "excessive workloads" and "nonconfrontational and supportive supervision" (Tr. 36), not half of a normal workload and "constant on-site supervision." More importantly, the VE in this case identified a number of occupations available to a person with Plaintiff's RFC (Tr. 67-70). As the Commissioner points out, SSA regulations contemplate use of a VE when the ALJ must determine "whether your work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566. The VE's testimony provides the necessary support for the ALJ's determination that Plaintiff was capable of performing competitive work in the national economy. Accordingly, the Court finds Plaintiff's sheltered work/SGA argument will not prevail and her motion will be denied in this regard.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Plaintiff's motion for summary judgment [Doc. 24] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 26] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE